OPINION
Defendant-Appellant Christopher Lauchard appeals his conviction on one count of felonious assault advancing a single assignment of error in which he claims that the jury's verdict was against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.
At trial, the eye witnesses testified that on the afternoon of June 14, 1998, Doug Adkins was driving his car in Springfield, Ohio, with his stepbrother Jeffrey Rife beside him in the front passenger seat, and his brother David Adkins riding in the back seat. At the same time, Lauchard was driving his car accompanied by Florence Silvers and Danny McFann in the front seat, and Silvers' two minor daughters, Heather and Mindy, in the back seat. Although Lauchard did not know any of the people in the Adkins car, his passengers, McFann and Silvers, had had "run ins" with David Adkins in the past, so when Lauchard and his companions spotted David Adkins in his brother's car, they followed the Adkins car. Within a short time, both cars stopped in close proximity to one another.
Two drastically different accounts of what happened next emerged at trial. Jeffrey Rife testified that he saw Lauchard hoist himself out through the driver's side window of the Lauchard car and sit on the door frame. Lauchard fired one shot across the top of the roof of his car, shattering the rear window of the Adkins car. Rife's stepbrother, Doug Adkins, immediately noticed him bleeding and drove to a nearby gas station where he called the police.
Doug Adkins testified that he did not see anyone with a gun, nor did he see anyone fire a gun that day. He did state, however, that the people in the Lauchard vehicle were cussing at him, his brother, and his stepbrother prior to the shooting.
David Adkins' account of the incident differed from Rife's significantly. He testified that he saw Danny McFann with "something that looked like a gun" come out of the passenger side window and fire the shot at the Adkins car.
Florence Silvers, who it is recalled was a passenger in the Lauchard vehicle, testified that she did not see any gun or anyone shoot a gun. She acknowledged, however, writing a statement soon after the incident in which she said Lauchard had reached into the back seat of the car, grabbed a gun, and shot at the Adkins car. She explained that she had made what she claimed from the witness stand was a false statement to the police because the police were threatening her and screaming at her, told her Rife was dead, and told her they already knew Lauchard was the shooter. Tellingly, she also indicated that she was protecting her boyfriend, McFann, by implicating Lauchard.
Melinda Silvers, Florence's thirteen-year-old daughter, testified that McFann got out of the Lauchard car, shot at the Adkins car, then returned to the Lauchard car. She, too, acknowledged that in her statement to the police shortly after the shooting she said Lauchard was the shooter, and, like her mother, claimed the police pressured her into saying so.
Another of Florence's daughters, sixteen-year-old Heather Silvers, did not say who fired the weapon at the Adkins car, but testified that she wrote a statement for the police implicating Lauchard in response to police pressure to do so. She also claimed to have written three or four statements prior to the one implicating Lauchard. In those statements she wrote that McFann had exited the Lauchard vehicle and shot at the Adkins car, however, no other written statements by Heather were produced at trial and the officer who took Heather's statement denied knowledge of any other statements she claimed to have made.
The defense presented only one witness, Lauchard himself. He testified that after spotting David Adkins in the Adkins car, McFann wanted to fight and began digging around in the car, eventually grabbing a gun Lauchard claimed to have taken away from a nine-year-old boy earlier in the day for the boy's own protection. Lauchard denied any knowledge that the gun was in his car at the time. After he asked McFann what he was doing, McFann told Lauchard he was "going to get those mother-f'ers." McFann then got out of the car and fired the shot. Lauchard hollered to McFann that if he did not return to the car he was going to be left behind, after which McFann tossed the gun on the floor of the car and got back into the Lauchard vehicle. Lauchard staunchly denied shooting the gun.
The police apprehended the Lauchard vehicle shortly after the incident. The occupants were removed from the car and placed in various police cruisers that had responded to the call for assistance by the first unit on the scene. After Lauchard was placed in the back of one of the cruisers, a television camera crew approached and began shooting videotape of him. Lauchard reacted violently and kicked the window out of the patrol car. At police headquarters, both Lauchard's and McFann's hands were swabbed and a gunshot residue test later confirmed the presence of antimony and barium consistent with gunshot residue on the right hands of both men.
Lauchard was subsequently tried on one count of felonious assault, one count of complicity to felonious assault, one count of having a weapon under disability, and one count of criminal damaging. The felonious assault and complicity to felonious assault counts carried with them firearm specifications. The jury returned guilty verdicts on the felonious assault with the weapons specification, having a weapon under disability, and criminal damaging counts, but a not guilty verdict on the complicity to felonious assault count. Following denial of his Crim. R. 29(A) motion, Lauchard filed his timely notice of appeal claiming his conviction on the felonious assault count was against the manifest weight of the evidence.
Before proceeding to Lauchard's assigned error, however, we note that in weight of the evidence challenges, an appellate court
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. While Thompkins explicitly permits this court to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence, such consideration is not unbounded. We explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges as follows:
 Because the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in Thompkins, supra, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence — in short, how persuasive it is.
 State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. Mindful of these principles, we turn to the merits of Lauchard's assignment of error, which he presents as follows:
 The jury verdict was against the manifest weight of the verdict [sic].
Lauchard claims his conviction was against the manifest weight of the evidence because of the discrepancies between the various witnesses' testimonies that developed at trial. Lauchard's "argument" consists primarily of rather lengthy quotations from the record with very little text devoted to how those quoted portions establish that the jury lost its way and created such a manifest miscarriage of justice that his conviction must be overturned. Thus, we will address as best we can what we perceive Lauchard's contentions to be.
Lauchard first quotes extensively from the prosecuting attorney's opening statement. We fail to see how the prosecutor's opening statement contributed to the jury's allegedly clear uncertainty as to what result it could or should reach, as Lauchard contends, especially since the jury was accurately instructed that opening statements are not evidence.
Next, Lauchard notes that the jury sent out two questions during its deliberations which he purports show that the jury "clearly speculated due to its cumulative reaction to [his] * * * guilt on the lesser charges." The questions related to why Danny McFann was not called to testify and if the jury could convict Lauchard on both the felonious assault count and the complicity to felonious assault count. These questions give no indication whatsoever that the jury was influenced to convict Lauchard on the felonious assault count because they believed him guilty of the weapons under a disability and criminal damaging counts. Moreover, there is nothing in the record to suggest that the jury was in any way influenced to convict Lauchard of felonious assault because they believed him guilty of the lesser charges.
 As for Lauchard's claim that the jury discounted the testimony of all witnesses except Jeffrey Rife, we observe, as we have before, that "substantial deference [is to] be extended to the factfinder's determinations of credibility." Lawson, supra. Florence Silvers' and Melinda Silvers' credibility was called into question by their admissions that they had each made written statements implicating Lauchard prior to testifying that McFann had been the shooter. David Adkins testified that McFann was the shooter, but it was also brought out at trial that he had been engaged in an ongoing feud with McFann and Florence Silvers. Consequently, the jury could have reasonably discounted the testimony of Florence Silvers, Melinda Silvers, and David Adkins, and we cannot say that in doing so, the jury "clearly lost its way and created such a manifest miscarriage of justice that * * * [Lauchard's] conviction must be reversed and a new trial ordered."
Doug Adkins and Heather Silvers testified that they had not seen who fired the shot at the Adkins vehicle, leaving Lauchard and Rife as the only other eye witnesses whose credibility needed to be assessed by the jury. As noted above, "[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses."Lawson, supra. We cannot say that the jury's decision to believe Rife's account of the incident and disbelieve Lauchard's suggests to us that the jury lost its way, as Lauchard contends. Thus, even if the jury did "discount, wholly, the testimony of all witnesses, other than Jeffrey Rife" as Lauchard contends, we do not find that the jury necessarily lost its way.
Next, Lauchard seems to argue that because the record fails to "establish a case" on the complicity to felonious assault count, the jury's guilty verdict on the felonious assault count itself was against the manifest weight of the evidence. Lauchard was found by the jury to be not guilty of complicity to felonious assault, and we are unable to discern how the State's failure to "establish a case" on that count shows that the guilty verdict on another count was against the manifest weight of the evidence.
Lauchard also cites certain testimony from the record concerning Rife's identification of Lauchard as the shooter and McFann as a passenger in Lauchard's car at the time as somehow indicating Rife's uncertainty about events just prior to the shooting, in particular, that McFann was outside the Lauchard car at the time the gun was fired. Frankly, we fail to see what Rife's photo identification of Lauchard and McFann have to do with his alleged uncertainty about events surrounding the shooting. Rife's identification of the men, both by photo array and at trial, was unequivocal and unwavering. Thus, we are unconvinced by Lauchard's argument to the contrary.
Next, Lauchard suggests that if Rife's "own relatives" (David and Doug Adkins, Rife's stepbrothers) couldn't "cooberate" Rife's testimony, then it should not have been believed by the jury. There is no requirement we know of that requires a victim's testimony to be corroborated by his relatives, or anyone else for that matter, before it may be believed by the trier of fact, and we decline to reverse Lauchard's conviction on that ground.
Lauchard goes on to argue that the testimonies of Melinda and Heather Silvers "helped detail any complicity theory" by implicating Melinda's sister Heather instead of Lauchard as the person who hid the weapon under the back seat of the Lauchard vehicle after the shooting. Again we note that Lauchard was found not guilty of the complicity to felonious assault count, which makes his argument that someone else hid the weapon superfluous.
In conclusion, we find Lauchard's arguments that his conviction for felonious assault was against the manifest weight of the evidence meritless. The judgment of the trial court is affirmed.
 ____________________________ FREDERICK N. YOUNG, J.
WOLFF, J. and FAIN, J., concur.